UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:09-CV-00022-TBR

GENE A. WILSON and
KAYLYNN J. WILSON                                               PLAINTIFFS

v.

DEBI DAVIS and LARRY DAVIS, Individually and
d/b/a TWELVE OAKS QUARTER HORSES                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendants' Motion for Summary Judgment (DN 13). Plaintiffs have filed a response (DN 14). Defendants have filed a reply (DN 15). This matter is now ripe for adjudication. For the following reasons, Defendants' Motion is DENIED.

**BACKGROUND**

Plaintiff, Gene Wilson ("Wilson"), is a farmer who has been involved with horses all his life and has been involved in artificial breeding of horses for 25 years. Wilson is co-owner of a stallion named "LT Kid." Wilson has previously collected semen from LT Kid at his farm.

In 2007, Wilson decided to bring LT Kid, as well as several mares, to Kentucky for artificial breeding in order to participate in an incentive program offered by Kentucky. Wilson had seen an advertisement in American Quarter Horse magazine soliciting customers to stand their stallions at Defendants' farm ("Twelve Oaks"). Twelve Oaks Quarter Horses is an assumed name of the general partnership of defendants Debi and Larry Davis.

In November 2007, after seeing the advertisement and talking to defendant Debi Davis ("Davis") on the telephone, the Wilsons met Davis at the American Quarter Horse World Show in Oklahoma City. At that time, the Wilsons received a folder which contained, 1) Davis' business card for Twelve Oaks Quarter Horses; 2) pictures of Twelve Oaks farm and pictures purporting to

be Davis's breeding equipment; and 3) the farm's form Stallion Contract, drafted by Davis and reviewed by her attorney.

Wilson signed the Stallion Contract on January 10, 2008, and arrived at Twelve Oaks on January 15, 2008. When Wilson arrived with LT Kid, Davis did not have a breeding dummy. A breeding dummy (or phantom) is a necessary piece of equipment that the stallion mounts during the collection process. Davis told Wilson the dummy she had ordered had been lost in the mail and that she had ordered a replacement dummy.

A few weeks later, Wilson returned to the farm to drop off several mares to be bred to LT Kid. At that time Davis did not have a breeding dummy. Wilson had brought his own dummy and artificial vagina that he used on his farm to collect from stallions. Wilson decided to stay and assist with the breeding, rather than leaving his stallion and mares at Twelve Oaks for artificial breeding by Davis. It is undisputed that it is unusual for an owner to stay for collection.

Wilson testified that he and Davis collaborated on how and where to set up the breeding equipment. Wilson noted the only disagreement concerned the enclosure for the colt which presented a problem with how he was to approach the stallion with the artificial vagina. Davis testified that Wilson dictated how and where the equipment was to be set up.

After the equipment was set up, LT Kid was successfully collected on three occasions. Each time, Davis would lead the stallion to the palpating chute where the mare was contained and would lead the stallion to the dummy after he got an erection. Wilson testified that both Wilson and Davis assigned these roles since he needed to handle the artificial vagina and how things were working on the dummy.

On February 14, 2008, Wilson and Davis attempted to collect from LT Kid again. At this

time, Kim Abernathy, a veterinarian, and her assistant, Amanda Young, were present. Davis led LT Kid to the tease mare in the palpating chute, LT Kid got an erection, Davis backed LT Kid away from the chute, and LT Kid went to the dummy. Wilson proceeded toward LT Kid to collect as he had in the past; however, the horse turned around and kicked Wilson in the face. There is dispute about whether the horse stopped prior to turning around or whether it was a continuous action.

Wilson was severely injured. He and his wife, Kaylynn Wilson, have filed this action alleging negligence, gross negligence, fraud, misrepresentation, negligent misrepresentation and breach of contract. Defendants now move for summary judgment.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere

existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

Defendants argue Plaintiffs are unable to state a claim for fraud, misrepresentation, negligent misrepresentation or breach of contract due to Plaintiffs' waiver of the breach. Defendants further argue Plaintiffs are unable to state a claim under any negligence theory as Plaintiffs are unable to establish a duty owed on the part of Defendants. Plaintiffs contend the requirements for waiver were not met in this case and a duty was owed.

### I. Waiver of non-negligence claims

Under Kentucky law, one may waive rights to which he is otherwise entitled. *Eaton v. Trautwein*, 155 S.W.2d 474, 477 (Ky. 1941). For example, "[a] purchaser by his conduct may waive the right to set up as a defense to an action by the vendor for damages for breach of contract any particular defense or objection which he might otherwise have." *Id.* (quotation marks and citation omitted). In *Clarke v. Fishback*, the highest court in Kentucky held that a party who, after discovering a fraud which induced him to enter the contract, continues to receive benefits under the

4

contract, or conducts himself with respect to the contract as though it was still binding and enforceable, will be considered to have affirmed the contract and waived his right to rescission. 262 S.W. 265, 266 (Ky. 1924); *see also Id.*

Plaintiff notes that these cases involve land sale contracts and rescission therefore they are inapplicable. The Court notes that Kentucky courts have applied the same principle in insurance contract cases. *Casner v. Bituminous Casualty Corp.*, 158 S.W.2d 618, 621 (Ky. 1942) ("[T]his court will relieve against forfeitures by applying the doctrine of 'Waiver' or 'Estoppel', where the conduct of the party claiming the forfeiture has been such as to induce the non-compliance with conditions upon which the forfeiture is based.").

However, in order for waiver to be effective the waiver "must be supported by a consideration either good or valuable, and the party making the waiver must have been fully informed as to the material facts and intentionally made the waiver." *Niles v. Meade*, 224 S.W. 854, 857 (Ky. 1920). Plaintiffs assert there was no consideration given and Wilson was not aware of the material facts nor did he intentionally make the waiver. Without determining whether Wilson was fully informed as to the material facts or intentionally made the waiver, the Court finds no consideration was provided for the waiver. Defendants are not entitled at this time to judgment as a matter of law as to Plaintiffs' claims for fraud, misrepresentation, negligent misrepresentation and breach of contract.

**II. Claims based on Negligence**

In order to establish a claim of negligence, a plaintiff must be able to show duty on the part of the defendant, breach of that duty and injury as a result of the breach. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). Defendants argue Plaintiffs are unable to succeed

5

on a negligence claim because Defendants owed no duty to Plaintiffs. Defendants' rely on a premise liability theory of negligence in arguing they owed no duty to Plaintiffs. However, the Court finds Plaintiffs' claim for negligence does not arise under a premises liability theory of negligence.

The most basic theory of negligence charges that "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Isaacs v. Smith*, 5 S.W.3d 500, 502 (Ky. 1999) (quoting *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987)). Here, Plaintiffs assert Defendants had a duty to exercise reasonable care in breeding the stallion. Plaintiffs argue there is evidence that Defendants failed to act with reasonable care as represented in the testimony of Dr. Karen Wolfdorf, DVM, and Dr. Kimberly Abernathy, DVM. The Court finds there is a genuine issue of material fact whether Defendants acted negligently; therefore, Defendants are not entitled to summary judgment as to Plaintiffs' claims of negligence and gross negligence.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED Defendant's motion is DENIED.