UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:09-CV-00022-TBR

GENE A. WILSON and
KAYLYNN J. WILSON                                              PLAINTIFFS

v.

DEBI DAVIS and LARRY DAVIS, Individually and
d/b/a TWELVE OAKS QUARTER HORSES                               DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendants' Motions in Limine (DN 21). Plaintiffs have filed a response (DN 23). Defendants have filed a reply (DN 25). This matter is now ripe for adjudication. For the following reasons, Defendants' Motion is DENIED.

**BACKGROUND**

Plaintiff, Gene Wilson ("Wilson"), is a farmer who has been involved with horses all his life and has been involved in artificial breeding of horses for 25 years. Wilson is co-owner of a stallion named "LT Kid." Wilson has previously collected semen from LT Kid at his farm.

In 2007, Wilson decided to bring LT Kid, as well as several mares, to Kentucky for artificial breeding in order to participate in an incentive program offered by Kentucky. Wilson had seen an advertisement in American Quarter Horse magazine soliciting customers to stand their stallions at Defendants' farm ("Twelve Oaks"). Twelve Oaks Quarter Horses is an assumed name of the general partnership of defendants Debi and Larry Davis.

In November 2007, after seeing the advertisement and talking to defendant Debi Davis ("Davis") on the telephone, the Wilsons met Davis at the American Quarter Horse World Show in Oklahoma City. At that time, the Wilsons received a folder which contained, 1) Davis' business card for Twelve Oaks Quarter Horses; 2) pictures of Twelve Oaks farm and pictures purporting to

be Davis's breeding equipment; and 3) the farm's form Stallion Contract, drafted by Davis and reviewed by her attorney.

Wilson signed the Stallion Contract on January 10, 2008, and arrived at Twelve Oaks on January 15, 2008. When Wilson arrived with LT Kid, Davis did not have a breeding dummy. A breeding dummy (or phantom) is a necessary piece of equipment that the stallion mounts during the collection process. Davis told Wilson the dummy she had ordered had been lost in the mail and that she had ordered a replacement dummy.

A few weeks later, Wilson returned to the farm to drop off several mares to be bred to LT Kid. At that time Davis did not have a breeding dummy. Wilson had brought his own dummy and artificial vagina that he used on his farm to collect from stallions. Wilson decided to stay and assist with the breeding, rather than leaving his stallion and mares at Twelve Oaks for artificial breeding by Davis. It is undisputed that it is unusual for an owner to stay for collection.

Wilson testified that he and Davis collaborated on how and where to set up the breeding equipment. Wilson noted the only disagreement concerned the enclosure for the colt which presented a problem with how he was to approach the stallion with the artificial vagina. Davis testified that Wilson dictated how and where the equipment was to be set up.

After the equipment was set up, LT Kid was successfully collected on three occasions. Each time, Davis would lead the stallion to the palpating chute where the mare was contained and would lead the stallion to the dummy after he got an erection. Davis handled the artificial vagina.

On February 14, 2008, Wilson and Davis attempted to collect from LT Kid again. At this time, Kim Abernathy, a veterinarian, and her assistant, Amanda Young, were present. Davis led LT Kid to the tease mare in the palpating chute, LT Kid got an erection, Davis backed LT Kid away

2

from the chute, and LT Kid went to the dummy. Wilson proceeded toward LT Kid to collect as he had in the past; however, the horse turned around and kicked Wilson in the face. There is dispute about whether the horse stopped prior to turning around or whether it was a continuous action.

Wilson was severely injured. He and his wife, Kaylynn Wilson, have filed this action alleging negligence, gross negligence, fraud, misrepresentation, negligent misrepresentation and breach of contract. This Court previously denied a motion for summary judgment, stating that the claims presented an issue of fact for a jury.

## STANDARD

Under the Federal Rules of Evidence, "[a]ll relevant evidence is admissible, except as otherwise provided . . . Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

## DISCUSSION

Defendants first ask for the exclusion of any evidence that Defendants had a duty to Plaintiffs when Plaintiffs were aware of/helped create the risk. Defendants next ask for the exclusion of any evidence on industry standards.

### I. Duty of Defendants

Defendants ask for the exclusion of any evidence related to Defendants having a duty to prevent Plaintiff from engaging in a risk that he was aware of and/or that he created. The basic premise under Kentucky law is that "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Isaacs v. Smith*, 5 S.W.3d 500, 502 (Ky. 1999) (internal quotations omitted). Defendants cite case law limiting the holding of *Issac* and dismissing cases because Defendant owed Plaintiff no duty.

The Court has ruled that Defendants owed Plaintiff a duty to exercise ordinary care in their

3

activities to prevent foreseeable injury. Plaintiff likewise had a duty to exercise ordinary care for his own safety. The Court found there was an issue of fact as to the fault of Plaintiff and Defendant. The issue of comparative fault will be determined by a jury which is properly instructed.

## II. Industry Standards

Defendants seeks to prohibit Plaintiffs' experts from testifying as to industry standards when the expert admitted no such written standards exist. Defendants admitted that they do not seek to limit the expert's opinion based on their training and experience. DN 25, pg 1.

Assuming the expert is properly qualified, she may testify as to whether Defendants' action deviated from the custom or standard of other breeding facilities and whether in her opinion they were unsafe and why.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED Defendant's motion is DENIED as stated herein.